IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GARY LONG, JR., <br><br> *Plaintiff*, <br><br> v. <br><br> CITY OF PHILADELPHIA, *et al.*, <br><br> *Defendants*. | CIVIL ACTION <br> No. 15-00202 |

**MEMORANDUM**

**PAPPERT, J.**                                                                                          **January 28, 2016**

      Plaintiff Gary Long, Jr. ("Long") was arrested in Langhorne, Pennsylvania on October 28, 2014 pursuant to an arrest warrant previously issued for a different man also named Gary Long. He was transported to Philadelphia where he remained in custody for almost three days. On July 10, 2015, Long filed an amended complaint (ECF No. 24) against the City of Philadelphia ("Philadelphia" or "the City"), Philadelphia Corrections Officer Patrick Gordon ("Gordon"), Montgomery County, Pennsylvania ("Montgomery County"), and Dorothy Camasso ("Camasso"). Long asserts claims for false imprisonment under 42 U.S.C. Section 1983 against Gordon and Camasso,[1] municipal liability against Philadelphia and Montgomery County, and false arrest and false imprisonment under Pennsylvania law against Gordon and Camasso.[2] (Am. Compl. ¶¶ 45–80.)

---

[1] While Long's amended complaint also references a Section 1983 claim for false arrest, (Am. Compl. ¶ 50), Long conceded the claim at oral argument. (Oral Arg. 78:15–18, ECF No. 36.)

[2] Montgomery County and Camasso filed a motion to dismiss and the Court heard oral argument on that motion on January 12 also. The Court granted the motion in a separate opinion and order. (ECF Nos. 37, 38.)

1

Philadelphia and Gordon filed a motion for summary judgment on Long's amended complaint. (Defs.' Mot., ECF No. 31.) Long responded to the motion. (Pl.'s Resp., ECF No. 33.) The Court heard oral argument on January 12, 2016 and has carefully reviewed the record. (ECF No. 36.) There is no evidence in the record which would enable a reasonable juror to find that Gordon deprived Long of his constitutional rights. As a result, Long cannot establish a municipal liability claim against Philadelphia. The Court accordingly grants the motion and dismisses the claims against Gordon and the City.

## I.

On October 28, 2014, Long, who is caucasian, was involved in a traffic incident in Langhorne. (Pl.'s Resp. at 2.) A Langhorne police officer arrived at the scene and requested Long's identification. (*Id.*) The officer ran Long's identification and "erroneously believed" there was an open warrant for his arrest. (*Id.*)

In fact, the warrant was for "another man named Gary Long," an African-American with a different age. (*Id.*) Several years earlier Camasso, while working as a data entry clerk in Montgomery County, allegedly entered incorrect information into Pennsylvania's Common Pleas Case Management System ("CPCMS").[3] (*Id.*) This error caused Long's information to be "linked to a warrant for another man named Gary Long." (*Id.*)

The Langhorne officer contacted the Pennsylvania State Police to take Long to Philadelphia, where the warrant in question had originated. (*Id.*) A state trooper arrived and drove Long to a state police barracks. (*Id.*) Long told an officer at the barracks that the warrant was not for him. (*Id.*) The officer replied that the person identified in the warrant "could be []

---

[3] The amended complaint does not state Camasso's job title or position; she is described as merely an "employee." (Am. Compl. ¶ 4.) At oral argument, all parties agreed she was a "data entry clerk." (Oral Arg. 19:18–21.) The amended complaint also avoids alleging *when*, in the course of these events, Camasso erred. Long's counsel acknowledged at oral argument that it occurred sometime in October 2008. (Oral Arg. 12:3–14.)

2

him" and Long was then taken to the Curran-Fromhold Correctional Facility ("CFCF") in Philadelphia. (*Id.*)

The car transporting Long to CFCF stopped at the "first window" in the Classification, Movement, and Registration unit ("CMR") to present Long's paperwork. (Plaintiff's Statement of Material Facts ("PSMF") ¶¶ 14–15, ECF No. 32; Defendants' Statement of Material Facts ("DSMF") ¶¶ 14–15, ECF No. 31 at Ex. 1; Gordon Decl. ¶¶ 13a–c, ECF No. 31 at Ex. A.)[4] Other than verifying that the paperwork is correct, additional identification of the arrestee is not done at this first window. In fact, the arrestee is not even visible from the window. (PSMF ¶¶ 16–17; DSMF ¶¶ 16–17; Gordon Decl. ¶¶ 13d–e.) At some point during the verification process, Gordon printed a "valuables receipt" that allegedly showed a picture of an African-American man. (PSMF ¶ 18.) Sometime thereafter during the intake process, Correctional Officer Emil Rogers ("Rogers") notified Gordon that Long's information showed two Police Identification Numbers ("PID"). (PSMF ¶ 19; DSMF ¶ 19; Gordon Decl. ¶ 13g.) Inmates should only have one PID. (PSMF ¶ 20; DSMF ¶ 20; Gordon Decl. ¶ 13h.) Based on this information, Gordon investigated Long's record on CPCMS and printed out a First Judicial District of Pennsylvania ("First District") Secure Court Summary for each PID. (PSMF ¶¶ 21–24; DSMF ¶¶ 21–24; Gordon Decl. ¶¶ 13i–l.)

Gordon then wrote a "Post-it" note message to Mary Palma ("Palma"), the court representative for the First District. The note stated: "Mary: This Guy [Long] has 2 PPN's

---

[4] The Court relies in large part on the declarations of Gordon and Warrant Service Unit ("WSU") Commanding Officer Thomas Press ("Press") to establish the facts concerning Long's nearly three day detention in CFCF. (*See generally* ECF No. 31 at Exs. A, C.) The declarations, which are unrebutted, constitute the *only* record evidence other than the allegations in the Amended Complaint concerning the events that transpired at CFCF. Long did not conduct *any* discovery in this case. (Oral Arg. 12:3–14.) Philadelphia and Gordon's motion for summary judgment includes as exhibits Gordon's declaration, Long's Municipal Court of Philadelphia paperwork, Long's warrant, Long's intake information from the Philadelphia Prison System (Defs.' Mot. at Ex. A), Philadelphia Prisons Policies and Procedures (*Id.* at Exs. B, D), and Press's declaration (*Id.* at Ex. C). Long's response attaches some of these exhibits in a different order, but does not include any additional documents. (Pl.'s Resp. at Exs. A–H.)

["Police Photo Number," which is synonymous with PID].  He is scheduled for B/W [Bench Warrant] hearing today [Long mistakenly wrote "today" instead of "tomorrow"] 10-30-14." (PSMF ¶¶ 25–32; DSMF ¶¶ 25–32; Gordon Decl. ¶¶ 13m–r.)  After reading the note, Palma notified someone in the Warrant Service Unit ("WSU") that Long had two PID numbers.  (PSMF ¶ 35; DSMF ¶ 35; Press Decl. ¶¶ 3, 6.)  Ron Ford ("Ford"), a WSU investigator, looked into the matter and determined that CPCMS contained information pertaining to two Gary Longs with the same birthdate and State Identification Number ("SID") associated with the warrant.  (PSMF ¶ 36; DSMF ¶ 36; Press Decl. ¶ 8.)  Ford established that Long's information was mistakenly associated with another Gary Long—the actual subject of the warrant.  (PSMF ¶¶ 37–38; DSMF ¶¶ 37–38; Press Decl. ¶¶ 12–13.)  Based on Ford's investigation, WSU Commanding Officer Thomas Press ("Press") concluded that Long was not "the" Gary Long wanted on the warrant. (PSMF ¶ 41; DSMF ¶ 41; Press Decl. ¶¶ 17–19.)  Press authorized and requested Long's release from the Philadelphia Prison System ("PPS") on October 30, 2014, at 2:08 p.m.  (PSMF ¶¶ 41–42; DSMF ¶¶ 41–42; Gordon Decl. ¶ 13u.)  Long was released at 6:25 p.m. that day.  (PSMF ¶ 43; DSMF ¶ 43; Gordon Decl. ¶ 13v.)

In all, Long was held at CFCF for two nights and three days.  (Am. Compl. ¶ 40.)  Long claims he "suffered a painful kidney stone attack" during his imprisonment and missed a work presentation, which was the "last stage of an interview process for a new job."  (*Id.* ¶¶ 42–43.) As a result, he was not further considered for the position.  (*Id.* ¶ 44.)  All of this caused Long to suffer "emotional distress, fear, anxiety, and embarrassment."  (*Id.* ¶ 41.)

Long filed an initial complaint on January 15, 2015 against Philadelphia, Langhorne Borough ("Langhorne"), the Commonwealth of Pennsylvania ("the Commonwealth"), and Philadelphia Corrections Officer "John Doe" ("John Doe").  (Compl. ¶¶ 40–69, ECF No. 1.)  The

4

Commonwealth filed a motion to dismiss for lack of jurisdiction and failure to state a claim on March 19, 2015.  (Pa. Mot. to Dismiss at 4, ECF No. 12.)  The Commonwealth's unopposed motion was granted on April 14, 2015.[5]  (ECF No. 16.)  On July 10, 2015, Long filed an amended complaint which removed the Commonwealth and Langhorne as defendants, added Montgomery County and Camasso and substituted Gordon for "John Doe."  (Am. Compl. ¶¶ 2–5, ECF No. 24.)

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).  Summary judgment is granted where there is insufficient record evidence for a reasonable factfinder to find for the plaintiff.  *Id.* at 252.  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Id.*

When ruling on a motion for summary judgment, the Court may only rely on admissible evidence.  *See, e.g.*, *Blackburn v. United Parcel Serv., Inc.*, 179 F.3d 81, 95 (3d Cir. 1999).  A Court must view the facts and draw all reasonable inferences in favor of the nonmoving party.  *See In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 357 (3d Cir. 2004).  However, "an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment."  *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990).

---

[5]  Judge McLaughlin presided over this case until June 29, 2015.  (ECF No. 23.)

### III.

To establish a prima facie case under 42 U.S.C. Section 1983, the plaintiff must demonstrate that a person acting under color of law deprived him of a federal right.  *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995).  Further, the plaintiff must show that the person acting under color of law intentionally violated his Fourth Amendment rights or acted "deliberately indifferent" in violation of his Fourteenth Amendment rights.  *See, e.g.*, *County of Sacramento v. Lewis*, 523 U.S. 833, 843–44 (1998); *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989) (citing *Hill v. California*, 401 U.S. 797, 802–05 (1971)); *Berg v. County of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000).  Negligence by public officials is not actionable as a due process violation.  *See Daniels v. Williams*, 474 U.S. 327, 335–36 (1986); *see also Phillips v. Borough of Keyport*, 107 F.3d 164, 184 (3d Cir. 1997).

### A.

A Section 1983 false imprisonment claim is based on the Fourteenth Amendment protection against deprivation of liberty without due process of law.  *See Baker v. McCollan*, 443 U.S. 137, 142 (1979); *see also Groman*, 47 F.3d at 636; *Martinez v. Freund*, 13-6294, 2015 WL 1608429, at \*6 (E.D. Pa. Apr. 10, 2015).  If a police officer makes an arrest without probable cause, the arrestee may assert a false imprisonment claim based on any subsequent detention resulting from the arrest.  *See Baker*, 443 U.S. at 143–44; *see also Groman*, 47 F.3d at 636.  Therefore, claims for false imprisonment under Section 1983 are typically preceded by a false arrest claim.  *See, e.g.*, *J.B. ex rel. Benjamin v. Fassnacht*, 801 F.3d 336, 338 (3d Cir. 2015); *Santini v. Fuentes*, 795 F.3d 410, 415 (3d Cir. 2015); *Groman*, 47 F.3d at 631; *White v. Andrusiak*, 14-7045, 2015 WL 4999492, at \*1 (E.D. Pa. Aug. 19, 2015); *Martinez*, 2015 WL 1608429, at \*1.

Here, at oral argument Long's counsel conceded his false arrest claim against Gordon.[6] (Oral Arg. 78:15–18.) The Court is nonetheless left to analyze Long's false imprisonment claim absent a cognizable false arrest claim.

Long contends that despite his protests of mistaken identity, he was detained for almost three days until the validity of his assertions could be confirmed. A plaintiff's contention of mistaken identity alone, however, does not give rise to a constitutional claim. *Baker*, 443 U.S. at 144. Police officers such as Gordon are not "required by the Constitution to perform an error-free investigation of [a claim of mistaken identity]." *Id.* at 146. Additionally, the Court stated in *Baker* "that a detention of three days . . . does not . . . and could not amount to such a deprivation [of liberty]." *Id.* at 145. Here, Long was detained for less than three days. (Am. Compl. ¶ 40.) *Baker* makes clear that such a detention of limited duration does not constitute a deprivation of liberty. *Baker*, 443 U.S. at 145. Indeed, "[t]he Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted . . . for every suspect released." *Id.*

There is no evidence in the record which establishes that Gordon, acting under color of law, deprived Long of any federal right, let alone his Fourth and Fourteenth Amendment rights. *Groman*, 47 F.3d at 633. If anything, the record evidence shows that after being alerted by Rogers that Long's intake information contained two PIDs, Gordon worked quickly to investigate the issue. (PSMF ¶¶ 19–24; DSMF ¶¶ 19–24; Gordon Decl. ¶¶ 13g–l.) At most, Long could establish that Gordon was negligent when he did not ascertain Long's innocence as quickly as Long would have preferred. Again however, negligence by public officials is not

---

[6] Given the fact that Gordon was never even alleged to have arrested Long, that concession was not very meaningful. Long was arrested by the Langhorne officer who responded to the traffic incident. (Pl.'s Resp. at 2.)

actionable as a due process violation. *See supra* Part III; *see also Daniels*, 474 U.S. at 335–36 (1986); *Phillips*, 107 F.3d at 184.

## B.

Section 1983 municipal liability is evaluated pursuant to the United States Supreme Court's holding in *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978). To establish a "*Monell* claim," a plaintiff must: "[I]dentify the constitutional right at issue, identify the policy or custom at issue, identify the policymaker, demonstrate deliberate indifference or evidence of knowledge and acquiescence by the policymaker and demonstrate causation." *Glass v. City of Philadelphia*, 455 F. Supp. 2d 302, 342 (E.D. Pa. 2006). The plaintiff *must* allege a "deprivation rights protected by the Constitution" to form a *Monell* claim. *Monell*, 436 U.S. at 690. Negligence on the part of local government officials is not enough to impute liability under Section 1983. *See Andrews v. City of Philadelphia*, 895 F.2d 1469, 1481 (3d Cir. 1990).

Long challenges Philadelphia Prisons Policy Number 4.A.2, "Procedures for Admitting Prisoners into the Philadelphia Prison System."[7] (Policy at *1, Defs.' Mot. at Ex. B; Oral Arg. 56:25.) The policy requires intake officers to check the inmate's "date of birth, any previous addresses, social security number, aliases, any available photo IDs, booking number from the Police Administration Building, and any other available sources to positively identify the inmate." (Policy at *8, Defs.' Mot. at Ex B.) Long argues that the policy is deficient as it does not mandate fingerprint identification. (Oral Arg. 61:10–19, 62:18–63:12.)

---

[7] Although Long's amended complaint also includes a failure to train claim against the City, (Am. Compl. ¶¶ 67–68), he conceded that theory at oral argument (Oral Arg. 76:22–24).

Since the record does not establish that Gordon deprived Long of his constitutional rights, the Court need not analyze the *Monell* claim in any greater detail. Therefore, Long's *Monell* claim necessarily fails as well.[8]

### IV.

Long's federal claims for false imprisonment and municipal liability under 42 U.S.C. Section 1983 are the bases for Long's assertion of this Court's jurisdiction. (Am. Compl. ¶ 6.) With the dismissal of those claims, the Court declines to exercise supplemental jurisdiction over Long's state law claims for false arrest and false imprisonment. Pursuant to 28 U.S.C. § 1367(c)(3), the Court has discretion to decline to exercise supplemental jurisdiction over state law claims once all claims over which the Court has original jurisdiction have been dismissed. In such a situation, it is appropriate to refrain from exercising jurisdiction over the state law claims "in the absence of extraordinary circumstances." *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187, 196 (3d Cir. 1967). Long's state law claims against Gordon for false arrest and false imprisonment are therefore dismissed without prejudice.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

---

[8] Our Court recently decided a nearly identical issue at the motion to dismiss phase in *Morales v. City of Philadelphia*, 15-1318, 2016 WL 97925, at *1 (E.D. Pa. January 7, 2016). In *Morales*, the plaintiff, represented by the same lawyers who bring this case on behalf of Mr. Long, challenged (using the identical argument as the one they employ here) the same Philadelphia Prisons policy at issue in this case. *Id.* at *3. Judge Rufe dismissed the claim against the City with prejudice, as the plaintiff put forth "no facts from which the Court can infer that a policy which requires fingerprint verification of identity is necessary to prevent false imprisonment." *Id.*